```
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
------------------------------------X
REGAN DUFNER,                        Case No. 10CV-02027
                                     (Arterton, J.)
            Plaintiff,

     -against-

ROBERT LAPRE, GEORGE ROBERTA,
GARY MONGERO, AWARD ENTERPRISES,     May 13, 2011
INC., AND NORTHEAST SORT AND
FULFILLMENT CORP.,

            Defendants.
------------------------------------X
```

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**PERRY DEAN FREEDMAN**
**Attorney for Defendants**
**Roberta, Award Enterprises,**
**and Northeast**
**Ten Bank Street, Suite 650**
**White Plains, NY 10606**
**(914) 289-0040**

## **TABLE OF CONTENTS**

Table of Contents................................ i

Table of Authorities........................... iii

Preliminary Statement........................... 1

The Amended Complaint........................... 2

Exhibit "A" to the complaint-
"Partnership Agreement"........................ 6

Exhibit "B" to the Complaint- Stock
Purchase Agreement and Promissory Note......... 6

## **ARGUMENT**

A. THE COMPLAINT MUST BE DISMISSED
FOR FAILURE TO COMPLY WITH THE NEW YORK
FORUM SELECTION CLAUSE IN THE STOCK
PURCHASE AGREEMENT............................. 8


B. THE AMENDED COMPLAINT SHOULD BE
DISMISSED AS A MATTER OF LAW FOR
IMPROPER VENUE................................. 15

C. THE AMENDED COMPLAINT MUST BE
DISMISSED FOR LACK OF PERSONAL
JURISDICTION.................................. 16

D. EACH OF THE 12 COUNTS OF THE
COMPLAINT ARE INSUFFICIENT AS A
MATTER OF LAW................................. 17

        COUNT 1- BREACH OF CONTRACT.............. 17

        COUNTS 2 & 3-
        NEGLIGENT MISREPRESENTATION.............. 24

        COUNT 4- FRAUD........................... 25

i

COUNT 5- TORTIOUS INTERFERENCE WITH
BUSINESS OPPORTUNITY....................... 27

COUNT 6- DECLARATORY RELIEF............... 29

COUNT 7- UNJUST ENRICHMENT................ 30

COUNT 8- PROMISSORY ESTOPPEL
DETRIMENTAL RELIANCE....................... 31

COUNT 9- SECURITIES FRAUD................. 32

COUNT 10- SECURITIES VIOLATION-
BREACH OF FIDUCIARY DUTY.................. 34

COUNT 11- ACCOUNTING...................... 36

COUNT 12- CUTPA-C.G.S. §41-110-a.......... 37

**CONCLUSION**................................... 38

## TABLE OF AUTHORITIES

**STATUTES:**

15 USC §78(c)(17)

17 CFR §240.10(b)(5)

28 U.S.C.A. §1391(a)

C.G.S. §42-110(b) (CUTPA)

C.G.S. §42-110a(4),

Connecticut's General Statutes §52-59(b), §33-929,

Federal Rule Civ. Pro. 9(b)

New York's CPLR §3001

Rule 10(b)(5)

**CASES:**

2 Broadway, LLC, v. Credit Suisse First Boston Mortgage Capital, LLC, 2001 WL410074 (S.D.N.Y.).

Abbasi v. Herzfeld & Rubin, PC, 863 F. Supp. 144 (S.D.N.Y. 1994).

Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc. 404 F.3d 566 (2d Cir. 2005).

AGR Financial, LLC v. Ready Staffing, Inc., 99 F. Supp.2d 399 (S.D.N.Y. 2000).

Aguas Lenders Recovery Group, LLC v. Suez, 585 F.3d 696 (2d Cir. 2009).

Airlines Reporting Corporation v. Aero Voyagers, Inc. 721 F. Sup. 579 (S.D.N.Y. 1989).

Albany Molecular Research Inc. v. Schloemer, 2010 WL5168890 (N.D.N.Y. 2010).

American Mach and Metals v. De Bothezat Impeller Co., 166 F.2d 53 (2d Cir. 1948).

Amusement Industry Inc. v. Stern, 2011 WL867274 (S.D.N.Y.).

Ashcroft v. IQBAL, 29 S.Ct. 1937 (2009).

Beatie and Osbourne LLP v. Patriot Scientific Corporation, 431 F. Supp. 2d 367 (S.D.N.Y. 2006).

Bensmiller v. EI Dupont De Nemours & Company, 47 F.3d 79 (2d Cir. 1995).

Bergman v. Town of Hamden, 2011 WL337347 (D. Conn.).

Braddock v. Braddock, 60 A.D.3d 84 (1st Dept. 2009).

Bridgestone/ Firestone, Inc. v. Recovery Services, Inc., 98 F.3d 13 (2d Cir. 1996).

Bryan v. Stillwater Board of Realtors, 578 F.2d 1319 (10th Cir. 1977).

Certain Underwriters at Lloyds London v. St. Joe Minerals Corp., 90 F.3d 671 (2d Cir. 1996).

Chien v. Skystar Bio Pharmaceutical Co., 623 F. Supp.2d 255 (D. Conn. 2009).

Connecticut v. Moody's Corp., 664 F. Supp.2d 196 (D. Conn. 2009).

Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989).

Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S. 2d 599 (1959).

Dover Ltd. v. AB Watley, 423 F. Supp.2d 303 (S.D.N.Y 2006).

Fear & Fear, Inc. v. NII Brokerage, LLC, 50 A.D.3d 185, 851 N.Y.S.2d. 311 (4th Dept. 2008).

Feick v. Fleemer, 653 F.2d 69 (2d Cir. 1981).

Fongshi v. Age Group Ltd., 1996 WL627580 (S.D.N.Y.).

Ganino v. Citizens Utilities Co., 228 F.3d 154 (2d Cir. 2000).

Getso v. Harvard University Extension School, 2011 WL135012 (SDNY).

Goldsmith v. Goldsmith, 25 A.D.2d 515, 266 N.Y.S.2d 1021 (1st Dept. 1966) aff'd, 19 N.Y.2d 710 (1967).

Goodall v. Columbia Ventures, Inc., 374 F. Supp. 1324 (S.D.N.Y. 1974).

Gross v. Gross, 38 A.D.3d 893, 833 N.Y.S.2d 563 (2d Dept. 2007).

Gruntal and Co., Inc. v. San Diego Band Corp., 901 F. Supp. 607 (S.D.N.Y. 1995).

Hall v. Bellmont, 935 F.2d 1106 (10th Cir. 1991).

Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC, 27 Misc.3d 1236(A), 910 N.Y.S.2d 762 (S. Ct. NY Cnty. 2010).

Harsco Corporation v. Segui, 91 F.3d 337 (2d Cir. 1996).

IMG Fragrance Brands, LLC. v. Houbigant, Inc., 679 F. Supp.2d 395 (S.D.N.Y. 2009).

Jacksonville Newspaper Printing Pressmen and Assistants Union #57 v. Florida Publishing Company, 340 F. Supp. 993 (D. Ct. M.D. Florida, Jacksonville, 1972).

Johnson v. Baxter Healthcare Corp., 907 F. Supp. 271 (N.D. Illinois 1995).

Key Items, Inc. v. Altima Diamonds, Inc., 2010 WL3291582 (S.D.N.Y.).

Leeds v. Meltz, 85 F.3d 51 (2d Cir. 1966).

LFJ Realty Co. v. Bank of New York, 2011 WL1549055 (S. Ct. Kings Cnty.).

M&T Bank Corp. v. Gem Stone, CDO VII, Ltd., 68 A.D. 3d 1747 (4th Dept. 2009).

Manufactures Hanover Trust Co. v. Yanakas, 7 F.3d 310 (2d Cir. 1993).

Maryland Cas. Co. v. WR Grace and Co., 128 F.3d 204 (2d Cir. 2000).

McCrae Associates, LLC v. Universal Capital Management, Inc., 74 F. Supp. 2d 389 (D. Conn 2010).

M/S Bremen v. Zapata Off Shore Company, 407 U.S. 1, 92 S. Ct. 1907 (1972).

National Union Fire Insurance Company of Pittsburgh, PA v. Frasch, 751 F. Supp. 1075 (S.D.N.Y. 1990).

New Moon Shipping Company Limited v. Man B&W Diesel AG, 121 F.3d 24 (2d Cir. 1997).

Okoi v. Lel Al Israel Airlines, 378 F. Appx. 9, 2010, WL 1980263 (2d Cir.).

Olsavsky v. Casey, No. 5-92-324 (WWE), 1992 WL 363573, at 4 (D. Conn.).

Plaza Penthouse LLLP v. CPS 1 Realty, LP, 24 Misc.3d 1238(A), 899 N.Y.S.2d 62 (S. Ct. NY Cnty. 2009).

Preston Frankford Shopping Center Dallas, TX. Limited Partnership v. Butler Dining Services LLC, 2010 WL5072581 (W.D.N.Y.).

Rabin v. Mony Life Ins. Co., 387 F.Appx. 36, 2010 WL2838402 (2d Cir.).

Ramirez v. Wells Fargo Bank, NA, 2011 WL1585075 (N.D. Cal.).

Readco Inc. v. Marine Midland Bank, 81 F.3d 295 (2d Cir. 1996).

Refco, Inc. v. Sugrue, 2009 WL5548666 (S.D.N.Y.).

*River Glenn Associates, Ltd. v. Merrill Lynch Credit Corporation*, 295 A.D.2d 274, 743 N.Y.S.2d 870 (1st Dept. 2002).

*Roby v. Corporation of Lloyds*, 996 F.2d 1353 (2d Cir. 1993).

*Rubenstein v. Small*, 273 A.D. 102, 75 N.Y.S.2d 483 (1st Dept. 1947).

*Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 180, 510 A. 2d 972 (1986).

*St. John's University, New York v. Bolton*, 2010 WL5093347 (E.D.N.Y.).

*S&L Birchwood LLC v. LFC Capital Inc.*, 2010 WL4052187 (E.D.N.Y.).

*S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705 (2d Cir. 2010).

*SMS Marketing and Telecommunications, Inc. v. HG Telecom, Inc.*, 949 F. Supp. 134 (E.D.N.Y. 1996).

*Spencer Trask Software and Information Services LLC v. RPost International Ltd.*, 383 F. Supp.2d 428 (S.D.N.Y. 2003).

*Stadt v. Fox News Network, LLC*, 719 F. Supp. 2d 312 (S.D.N.Y. 2010).

*Telecommunications, Inc. v. HG Telecom, Inc.*, 949 F. Supp. 134 (E.D.N.Y. 1996).

*Trump v. Deutch Bank Trust Company Americas*, 65 A.D.3d 1329, 887 N.Y.S.2d 121 (2d Dept. 2009).

*Visual Word Systems, Inc. v. CPT Corp.*, 1985 WL567 (S.D.N.Y. 1985).

*Wall v. CSX Transportation, Inc.*, 471 F.3d 410 (2d Cir. 2006).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
-------------------------------------X
REGAN DUFNER,                                    Case No. 10CV-02027
                                                 (Arterton, J.)
               Plaintiff,

     -against-                                   **MEMORANDUM OF LAW**
                                                 **IN SUPPORT OF MOTION**
ROBERT LAPRE, GEORGE ROBERTA,                    **TO DISMISS**
GARY MONGERO, AWARD ENTERPRISES,
INC., AND NORTHEAST SORT AND                     May 13, 2011
FULFILLMENT CORP.,

               Defendants.
-------------------------------------X

                   <u>**PRELIMINARY STATEMENT**</u>

          This Memorandum of Law is respectfully submitted on

behalf of Defendants George Roberta ("Roberta"), Award

Enterprises, Inc. ("Award"), and Northeast Sort and Fulfillment

Corp. ("NSF")[1], in support of their motion to dismiss the amended

complaint.  A copy of the amended complaint is annexed hereto as

Exhibit "A".

          Although the amended complaint expressly represents that the

agreement between the parties names Connecticut as the venue for

any lawsuit, it does not.  The agreement attached to the amended

complaint as Exhibit "B" contains a mandatory New York forum

selection clause, requiring dismissal of this action.

          Although the amended complaint expressly represents that the

agreements between the parties took place in Connecticut, they

---

[1]NSF's counsel has moved this Court to withdraw his appearance on
its behalf. The motion is subjudice.

1                          **ORAL ARGUMENT IS NOT REQUESTED**

did not.  The agreements attached to the complaint expressly provide that they were made and executed in Carmel, New York. The agreement between the Plaintiff and the moving Defendants contains a New York choice of law provision, a mandatory New York forum selection clause, and the allegations of the amended complaint prove that all transactions between the parties took place in New York.  The amended complaint must be dismissed for improper venue.

Neither Roberta nor the defendant corporations, have or had any contact with Connecticut, the agreements were prepared and executed in New York, and this suit involves the purchase, ownership, and operation of a New York restaurant. The complaint must be dismissed for lack of personal jurisdiction.

Each count of the complaint is premised upon vague, conclusory, and no supporting allegations whatsoever, sufficient to state a claim. The allegations which are asserted, are destroyed by the express disclaimer and general merger clauses of the agreement. Each count is insufficient as a matter of law.

<u>**THE AMENDED COMPLAINT**</u>

A review of the four corners of the amended complaint, the partnership agreement annexed thereto between the Plaintiff ("Dufner") and co-defendant Mongero ("Mongero"), as well as the stock purchase agreement between Dufner, Mongero, Roberta, Award, and NSF, reveals the following:

-- Roberta is the president and shareholder of Award, a New

2

York corporation which owns property located at 166 Stoneleigh Avenue, Carmel, New York.

-- Roberta owned the shares of NSF, a New York corporation, whose sole purpose was to own and operate a restaurant, located at 166 Stoneleigh Avenue, Carmel, New York, and which leases same from Award.

-- Dufner and Mongero entered into a stock purchase agreement with Roberta, NSF, and Award (Exhibit "B" to the complaint)[2], whereby Dufner and Mongero agreed to purchase Roberta's stock in NSF, in order to own and operate the restaurant located in Carmel, New York, for $49,000.00.

-- Also attached to the complaint (as part of Exhibit "B"), is a promissory note, whereby Dufner and Mongero promised to pay a portion of the purchase price ($24,000.00), to Roberta, at no interest. The promissory note provides that Roberta would make an additional $14,500.00 credit line available to Dufner and Mongero, payable over 24 months.

The amended complaint attempts to plead 12 causes of action as follows:

Count 1- Breach of contract;

Count 2- Negligent misrepresentation;

Count 3- Negligent misrepresentation[3];

Count 4- Fraud

---

[2] The agreement recites that NSF is a party, but there is no signature on behalf of NSF. Rather, it has as signature line for Award Enterprises, Inc., as guarantor.

3

Count 5- Tortious interference with business opportunity;

Count 6- Declaratory relief;

Count 7- Unjust enrichment;

Count 8- Promissory estoppel- detrimental reliance;

Count 9- Securities fraud;

Count 10- Securities fraud violation- Breach of fiduciary duty;

Count 11- Accounting;

Count 12- CUTPA- C.G.S. §41-110(a).

A review of the amended complaint reveals that contrary to the complaint's representations at paragraph "13", that the claims arose in Connecticut, and that the written agreement between the parties names Connecticut for venue, rather, all transactions took place in New York, the agreements between the parties were drafted by Dufner's New York attorney, signed in New York, and contain a mandatory New York forum selection clause, requiring any proceeding to be commenced in the New York State courts, or for federal claims, in the New York District Courts.

With reference to Roberta, Award, and NSF, the amended complaint alleges:

-- Roberta is a resident of New York (par. 4);

-- Award and NSF are New York corporations with their principal place of business in New York (par. 6, 7);

-- That the claims arose in Connecticut, the negotiations and agreements between the parties took place in Connecticut,

---

[3] Counts two and three appear to be identical.

and the written agreement between the parties, names Connecticut as the appropriate venue for all actions. (Par. 13).

-- Dufner and Mongero became partners to purchase, lease and operate the restaurant in Carmel, New York. (Par. 22, 23).

-- Award owns the real estate at 166 Stoneleigh Avenue, Carmel, New York. (Par. 24).

-- Roberta caused NSF to be the tenant of Award for the Carmel, New York property. (Par. 25).

-- Dufner and Mongero contracted to purchase the stock of NSF from Roberta. A copy of the purchase agreement is attached thereto as Exhibit "B". (Par. 26).

-- Roberta made certain misrepresentations and omissions concerning the value of the leasehold, the stock of Award[4], the value of the assets to be acquired, the renting of the liquor license was legal, and that Roberta would advance further funds as necessary to capitalize the restaurant. (Par. 27, 28).

-- Mongero, Lapre "and/or" Roberta, jointly and severally coerced, strong armed, and blackmailed Dufner into no longer participating in the restaurant (Par. 45).

-- With the knowledge and consent of Roberta, Mongero and Lapre operated the restaurant, and excluded Dufner. (Par. 47).

_____

[4] There are no allegations that the stock of Award was being sold or transferred to anyone.

5

**EXHIBIT "A" TO THE COMPLAINT- "PARTNERSHIP AGREEMENT"**

The amended complaint incorporates and attaches a "partnership agreement" between Dufner and Mongero.  It provides that Dufner and Mongero form a partnership named G&R Partnership, to conduct restaurant purposes.

It expressly states that it was executed in Carmel, New York.

**EXHIBIT "B" TO THE COMPLAINT- STOCK PURCHASE AGREEMENT**

**AND PROMISSORY NOTE**

The amended complaint incorporates and attaches a stock purchase agreement and promissory note.  The agreement defines Dufner and Mongero as buyers, Roberta as seller, and NSF as the corporation.

Section 1 of the agreement provides that Roberta hereby sells his shares in NSF to Dufner and Mongero, and that the transfer will take place on January 1, 2011.

Section 2 of the agreement provides that the purchase price is $49,000.00, payable $25,000.00 cash at closing, and a $24,000.00 promissory note at no percent interest.

Section 10 of the agreement contains express disclaimers. It provides that:

**Except as provided in Section 11, none of the representations warranties or covenants contained in this agreement shall survive the closing of the purchase and sale of the shares.  Buyers acknowledge that it and its representatives have had full and complete access to the books and records, facilities, equipment, tax returns, contracts, insurance policies, inventories, and other assets of the company which it, and its representatives have desired or requested to see and/or review, and that it and**

**its representatives have had a full opportunity and access to all the records maintained by the corporation. Buyer further acknowledges that except as expressly provided in this agreement, neither Seller nor the company, or any other person, has made any representation of warranty, expressed or implied, as to the accuracy or completeness of any information regarding the company, not included in this agreement, or the Exhibits thereto, and neither the Seller, the company, or any other person, will have or be subject to any liability to Buyers or any other person resulting from the distribution to Buyers, or Buyers' use of, any such information. Buyers also acknowledge that Buyers have had sufficient opportunity to make whatever investigation it shall deem necessary and advisable for purposes of determining whether its conditions to the closing of the purchase and sale of the shares, shall have been satisfied. However, all parties agree that Buyers have relied on the representations made by Seller at paragraph "3" of this agreement. Furthermore, all parties agree that the assets of Northeast Sort and Fulfillment Corp., include only propane (-$700.00), a liquor license, lease with Award Enterprises, some alcohol, and any good will.**

As is evident from the agreement, and as set forth in the accompanying affidavit of Roberta, the agreement was prepared by Dufner and Mongero's Carmel, New York attorney, William Schilling, and Roberta was not represented by counsel. Both the agreement and the promissory note were prepared and signed in Schilling's Carmel, New York office. In that regard, Section 12(c) of the agreement, provides that any notices under the agreement shall be delivered to Seller by mailing same to Roberta, in New York, and if to Dufner and Mongero, to their attorney in Carmel, New York.

Section 12(d) of the agreement contains a General Merger clause, which provides as follows:

**This agreement, including the Exhibits thereto, and the other agreements expressly contemplated by this agreement, contain the entire agreement between the buyer and seller, with respect to the transactions contemplated hereby, and supersedes all prior oral and written agreements, memoranda, understandings and**

**undertakings between the parties hereto, relating to the subject matter hereof.**

Section 12(e) of the agreement provides that it shall be governed by and construed in accordance with the laws of the State of New York.

Section 12(i) of the agreement contains a mandatory New York forum selection clause, and irrevocable waiver of objection to venue in New York, which provides as follows:

**Seller, by Seller's execution of this agreement, and Buyer (i), irrevocably understand and agree that each of the Seller, the Buyer, the company, their respective successors or assigns, may bring any suit, action, or legal proceeding, arising out of this agreement, or any of the transactions contemplated hereby, in the courts of the State of New York, or, with respect to claims arising under federal law, the United States District Court of New York, (ii), irrevocably consent to the jurisdiction of each such court, in any suit, action, or legal proceeding, and (iii), irrevocably waive any objection it may have to the laying of the venue of any suit, action, or legal proceedings in any such Courts.**

Also attached to the complaint is a copy of the promissory note signed by Dufner and Mongero.

The note expressly states that it was executed in Carmel, New York.

<u>ARGUMENT</u>

<u>A. THE COMPLAINT MUST BE DISMISSED</u>

<u>FOR FAILURE TO COMPLY WITH THE NEW YORK FORUM SELECTION</u>

<u>CLAUSE IN THE STOCK PURCHASE AGREEMENT</u>

Paragraph 13 of the amended complaint represents to this Court that venue is proper in Connecticut, because the claims

arose in Connecticut, the negotiations and agreements took place in Connecticut, and the written agreement between the parties names Connecticut as the appropriate venue.  The representations at paragraph 13 are proven false, by its own exhibits and allegations.

As set forth herein above and quoted at length, Section 12(i) of the stock purchase agreement contains a mandatory New York forum selection clause and irrevocable waiver of objections to venue in the New York State Courts or, in the event of the existence of a Federal claim, in the New York Federal District Courts. The documents attached to the complaint are devoid of any consent to jurisdiction in the State of Connecticut, or in the Connecticut Federal District Court.

Although on a motion to dismiss, the factual allegations of the complaint must be accepted as true, and considered in the light most favorable to Plaintiffs, SMS Marketing and Telecommunications, Inc. v. HG Telecom, Inc., 949 F. Supp. 134 (E.D.N.Y. 1996), the Court need not ignore facts alleged in the complaint that undermine the Plaintiff's claim, nor give any credence to bald assertions and conclusions of law. Johnson v. Baxter Healthcare Corp., 907 F. Supp. 271 (N.D. Illinois 1995); Leeds v. Meltz, 85 F.3d 51 (2d Cir. 1966); Abbasi v. Herzfeld & Rubin, PC, 863 F. Supp. 144 (S.D.N.Y. 1994).

In addition to the mandatory New York forum selection clause, said agreement also contains at section 12(e), a New York

choice of law provision.

As proven by the affidavit of Roberta, the exhibits annexed thereto, by the notice provisions of the stock purchase agreement, (notice to Dufner's attorney), the agreement was prepared by Dufner's New York, attorney.

The promissory note attached to the complaint, expressly provides that it was executed in Carmel, New York. The partnership agreement between Dufner and Mongero (Exhibit "A" to the complaint) expressly provides that it was executed in Carmel, New York.

The subject matter of the complaint, the partnership agreement, and the stock purchase agreement, is Dufner's purchase of a restaurant located in Carmel, New York. In sum, the amended complaint and its exhibits, reveal a lack of any connection to Connecticut.

Where there is a forum selection clause in a contract between a Plaintiff and a Defendant, the burden is on the Plaintiff to prove by a strong showing that the forum selection clause is not enforceable.  New Moon Shipping Company Limited v. Man B&W Diesel AG, 121 F.3d 24 (2d Cir. 1997).

Forum selection clauses must be enforced unless it is shown by the Plaintiff that to enforce it would be unreasonable or unjust, or that the clause was obtained through fraud or overreaching.  Beatie and Osbourne LLP v. Patriot Scientific Corporation, 431 F. Supp. 2d 367 (S.D.N.Y. 2006); M/S Bremen v.

Zapata Off Shore Company, 407 U.S. 1, 92 S. Ct. 1907 (1972); In Re, Refco, Inc. v. Sugrue, 2009 WL5548666 (S.D.N.Y.); National Union Fire Insurance Company of Pittsburgh, PA v. Frasch, 751 F. Supp. 1075 (S.D.N.Y. 1990).

It is difficult to conceive of circumstances where Dufner, whose own attorney drafted the contract containing the New York forum selection clause, could argue that enforcement would be unreasonable.

The Court's apply a four step analysis determining whether to dismiss a claim based on a forum selection clause, as follows: (1) Whether the clause was reasonably communicated to the party resisting enforcement; (2) The Court determines whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum, or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum selection clause was communicated to the resisting party, has mandatory force, and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth and final step is to ascertain whether the resisting party has rebutted the presumption of enforceability, by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching. S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705 (2d Cir. 2010).

11

With reference to the Second Circuit's first area of inquiry, Dufner cannot argue that the clause was not communicated to him.  Dufner has admitted entering into the stock purchase agreement containing the forum selection clause.  Further, as is evidenced by the agreement itself, as well as set forth in the accompanying affidavit of Roberta, Dufner's attorney drafted the agreement.

As to whether the clause is mandatory or permissive, it is respectfully submitted that it is unquestionably mandatory.  The clause provides that the parties "irrevocably" understand and agree that any suit arising out of the agreement may be brought in the Courts of the State of New York, or, with respect to claims arising under federal law, the United States District Courts of New York.  The parties irrevocably consented to the jurisdiction of the New York State Court, or the New York Federal District Courts, with respect to claims arising under federal law, and irrevocably waived any objections they may have to the laying of venue in New York.

The law is clear that where a contract contains a waiver of objections to venue, the forum selection clause will be treated as mandatory. Aguas Lenders Recovery Group, LLC v. Suez, 585 F.3d 696 (2d Cir. 2009); Preston Frankford Shopping Center Dallas, TX. Limited Partnership v. Butler Dining Services LLC, 2010 WL5072581 (W.D.N.Y.).

It is anticipated that Dufner will argue that the clause is

permissive because it uses the word "may" with reference to the parties irrevocable understanding as to where any suit will be brought. However, a reading of the forum selection clause reveals that the word "may", provides Dufner with the limited choice of bringing State Court claims in the Courts of the State of New York, or with respect to claims arising under federal law, in New York Federal District Courts.  Where a forum selection clause in a contract provides that legal action to enforce the contract "may be brought" by a party in New York State or Federal Courts, same does not make the clause permissive, and thus unenforceable, but rather, indicates that if the party does bring an action, it has a choice of the state or federal forum.  AGR Financial, LLC v. Ready Staffing, Inc., 99 F. Supp.2d 399 (S.D.N.Y. 2000); Fear & Fear, Inc. v. NII Brokerage, LLC, 50 A.D.3d 185, 851 N.Y.S.2d. 311 (4th Dept. 2008); Trump v. Deutch Bank Trust Company Americas, 65 A.D.3d 1329, 887 N.Y.S.2d 121 (2d Dept. 2009).

Even if the clause could be viewed as permissive, where a permissive forum selection clause in a contract also contains an irrevocable waiver of objections to the designated venue, same is enforced as mandatory.  S&L Birchwood LLC v. LFC Capital Inc., 2010 WL4052187 (E.D.N.Y.); Aguas Lenders Recovery Group, LLC v. Suez, 585 F.3d 696 (2d Cir. 2009); Trump v. Deutch Bank Trust Company Americas, 65 A.D.3d 1329, 887 N.Y.S.2d 121 (2d Dept. 2009); Preston Frankford Shopping Center Dallas, TX. Limited Partnership v. Butler Dining Services LLC, 2010 WL5072581

(W.D.N.Y.); <u>S&L Birchwood LLC v. LFC Capital Inc.</u>, 2010 WL4052187 (E.D.N.Y). There can be no serious question that the clause is mandatory.

The third area of inquiry is whether the claims and parties involved are subject to the forum selection clause. Dufner is suing for breach of the very agreement containing the forum clause. In addition, it is clear from a review of the agreement itself, and the notice provisions, that Dufner's own attorney drafted the forum selection clause. There can be no serious dispute that the claims and parties are subject to the clause.

The final area of inquiry is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust. In that regard, it is respectfully submitted that a party, whose own attorney drafted the forum selection clause, and who seeks to enforce the agreement containing the clause, cannot as a matter of logic and common sense argue against enforcement.

There is a strong federal policy in favor of the enforcement of forum selection clauses. <u>In re, Refco Inc. v. Sugrue</u>, 2009 WL5548666 (S.D.N.Y.); <u>M/S Bremen v. Zapata Off Shore Co.</u>, 407 U.S.1.(1972); <u>Roby v. Corporation of Lloyds</u>, 996 F.2d 1353 (2d Cir. 1993).

Finally, the clause at issue requires that any claim arising out of the stock purchase agreement be brought in the  State

courts of New York.  Although the clause requires any federal claim to be brought in the New York Federal District Courts, as proven below, the complaint fails to state a claim for any cause of action, including federal law claims.

## B. THE AMENDED COMPLAINT SHOULD BE DISMISSED

## AS A MATTER OF LAW FOR IMPROPER VENUE

A fair reading of the complaint and its exhibits, proves that none of the claims arose in Connecticut, none of the agreements took place in Connecticut, and none of the Defendants have any contact with Connecticut.

28 U.S.C.A. §1391(a) provides that:

**A civil action wherein jurisdiction is founded only on diversity of citizenship, may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events, or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.**

The complaint alleges that all Defendants reside in New York.

The partnership agreement attached to the complaint states on its face that it was executed in Carmel, New York.

The stock purchase agreement and note appended to the complaint, proves that they were prepared by Dufner's New York attorney, and were executed in Carmel, New York.  The stock purchase agreement contains New York choice of law, and New York

15

forum selection clauses. It provides that all notices between the parties will be sent to Dufner's New York attorney and to Roberta, in New York.

A review of the complaint reveals that all of the events, claims, and facts, involved the purchase of a New York Corporation's stock, to own and operate a New York restaurant, which has a lease with a New York corporation.

The complaint and its exhibits prove that the parties and claims have no nexus to Connecticut.  Dufner's attorney recognized this fact in drafting a forum selection clause placing venue in New York State.

### C. THE AMENDED COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Due process permits the exercise of personal jurisdiction, only when a non-resident Defendant possesses sufficient minimum contacts with the forum State so that assertions of personal jurisdiction over Defendant is consistent with traditional notions of fair play and substantial justice. It is essential in each case that there be some act by which the Defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  Such purposeful conduct provides the Defendant with fair warning that he and his property may be subject to the exercise of that forum State's power. Bensmiller v. EI Dupont De Nemours & Company, 47 F.3d 79 (2d Cir. 1995).

The complaint alleges that Roberta is a resident of New York and that Award and NSF are both New York corporations with their principal place of business in New York.   As set forth in Roberta's affidavit, neither he, Award, nor NSF, have or ever had any contact with Connecticut in connection with this transaction. None of said Defendants maintain any residence or business in the State of Connecticut.

The exhibits to the complaint, and the complaint itself, reveal that the entirety of the claims involved, are predicated upon the sale of a New York corporation's stock, for the purposes of owning and operating a New York restaurant.   There is simply no nexus to Connecticut.

There can be no jurisdiction over these Defendants who do not have even minimum contacts with the State of Connecticut.

## D. EACH OF THE 12 COUNTS OF THE COMPLAINT ARE INSUFFICIENT AS A MATTER OF LAW

### COUNT 1- BREACH OF CONTRACT

Although the complaint alleges that "Defendants and each of them have breached the oral and written agreements between Defendants and Plaintiff", the complaint is devoid of any allegations of an oral agreement.

The complaint fails to plead with any detail whatsoever, what, if anything, Roberta, Award or NSF did to breach the stock purchase agreement.   Rather, it alleges in broad conclusory and vague terms, that Roberta made misrepresentations or omissions

17

concerning the "value of the purchase and lease hold, the liquor, and financing of the purchase".

As set forth below, Count 1, must be dismissed, as it consists of merely broad, vague allegations.  Further, even those vague allegations are destroyed by the express disclaimers and merger clauses of the stock purchase agreement.

The sum total of allegations against Roberta, Award and NSF, set forth in the complaint are as follows:

-- Par. 27:  Roberta made misrepresentations regarding the value of the purchase and leasehold, the liquor and financing of the purchase.

-- Par. 28: Roberta omitted to make representations regarding the value of the purchase and  leasehold and prior transactions.

-- Par. 45:  Mongero, Lapre "and/or" Roberta, and each of them, coerced, strong-armed and blackmailed Plaintiff into no longer participating in the restaurant project.

-- Par. 47:  With the implicit knowledge and consent of Roberta, Mongero and Lapre have excluded Plaintiff from the businesses opportunity.

The aforesaid are the sum total of "factual" allegations against Roberta, Award and NSF.  They are vague and fail to state with any specificity, what particular representations or omissions Roberta made or failed to make, or the actions he is alleged to have taken.

Section 10 of the stock purchase agreement contains express disclaimers, which destroy the vague allegations upon which the complaint is based. It is fully quoted herein above, and need not be repeated.

Section 12(d) of the stock purchase agreement, contains a general merger clause, which is quoted herein above. It need not be repeated.

The disclaimers and general merger clause disclaim the very representations which the complaint alleges Dufner relied upon.

The aforesaid contractual provisions expressly contradict Dufner's alleged reliance on representations or omissions concerning value, assets and the lease. On a motion to dismiss, the provisions of the parties' contracts, attached to the complaint, prevail over the conclusory allegations of the complaint, and although the facts pleaded are presumed to be true, allegations consisting of bare legal conclusions, as well as factual claims, flatly contradicted by the documentary evidence, are not entitled to consideration. 2 Broadway, LLC, v. Credit Suisse First Boston Mortgage Capital, LLC, 2001 WL410074 (S.D.N.Y.); Key Items, Inc. v. Altima Diamonds, Inc., 2010 WL3291582 (S.D.N.Y.).

When the contracting party disclaims the existence of, or reliance on, specified representations, it will not be allowed to claim it entered the contract in reliance thereon. For a contract term to be sufficiently specific under this standard,

there need not be a precise identity between the misrepresentation and the particular disclaimer. Rather, the rule operates where the substance of the disclaimer provisions tracks the substance of the alleged misrepresentations, notwithstanding samantical discrepancies. The specificity requirement is further relaxed when the contracting parties are sophisticated business people, and the disclaimer clause is the result of negotiations between them. The contracting party cannot assert misrepresentations concerning the financial condition of a party to the contract when it acknowledges in the contract that it has full familiarity with the financial condition of the corporation or the business, and generally disclaimed reliance on any representation by any signatory to the contract. Thus, a general disclaimer that a party has relied on any representations of the other signatory, coupled with the disclaiming parties' assertion of familiarity, with a particular subject area, is specific enough to preclude a claim of reliance on statements falling within that topic. Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc. 404 F.3d 566 (2d Cir. 2005); Harsco Corporation v. Segui, 91 F.3d 337 (2d Cir. 1996); Spencer Trask Software and Information Services LLC v. RPost International Ltd., 383 F. Supp.2d 428 (S.D.N.Y. 2003); Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S. 2d 599 (1959); Manufactures Hanover Trust Co. v. Yanakas, 7 F.3d 310 (2d Cir. 1993).

Here, although the complaint alleges that Roberta made representations or omitted to make representations concerning the value of the purchase, leasehold, liquor and financing of the purchase, the express disclaimers set forth at Section 10 of the contract, provide that no representations shall survive the closing, and that Dufner and his representatives acknowledge, and had full and complete access to the books, records, facilities, equipment, tax returns, contracts, insurance policies, inventories and other assets of the company, which they desired to see and/or review.

The disclaimer goes on to represent that Dufner and his representatives had a full opportunity to access all the records maintained by the corporation.  It goes on more specifically, to disclaim that neither Roberta nor NSF, or any other person, has made any representation or warranty as to the accuracy and completeness of any information regarding NSF, not included in the agreement or the exhibits thereto.  It further goes on to acknowledge that the only assets of the corporation are a negative balance for propane, a liquor license, the lease with Award, some alcohol, and any good will.

Where a contract provides that Plaintiff is not relying on any representations as to the matters it now alleges he was defrauded upon, such a contractual disclaimer, destroys the allegations in the complaint that the contract was entered into in reliance on contrary oral representations. Aetna Casualty and

21

<u>Surety Co. v. Aniero Concrete Co. Inc.</u>, 404 F.3d 566 (2d Cir. 2005); <u>Harsco Corporation v. Segui</u>, 91 F.3d 337 (2d Cir. 1996); <u>Danann Realty Corp. v. Harris</u>, 5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959).

The allegations of the complaint, which surmise that Mongero, Lapre "<u>and/or Roberta</u>", coerced Plaintiff out of participating in the venture, and that Roberta "implicitly" knew that Mongero and Lapre excluded Plaintiff, are so vague and conclusory as to be non-actionable.  Although a Plaintiff need not state precisely each element of the claim, he must plead minimal factual allegations on those material elements that must be proved. Allegations of conclusions or opinions are not sufficient when no specific facts are alleged by way of the statement of the claim.  <u>Hall v. Bellmont</u>, 935 F.2d 1106 (10th Cir. 1991); <u>Bryan v. Stillwater Board of Realtors</u>, 578 F.2d 1319 (10th Cir. 1977).

As the United States Supreme Court noted in <u>Ashcroft v. IQBAL</u>, 29 S.Ct. 1937 (2009), to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when a Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.  A plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a Defendant

22

has acted unlawfully.  Where a complaint pleads facts that are merely consistent with the Defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice. The Court is not bound to accept as true a legal conclusion couched as a factual allegation.  Only a complaint that states a plausible claim for relief survives a motion to dismiss. But where the well pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown that the pleader is entitled to relief.

Allegations such as those in the instant complaint, which allege that Roberta knew of or condoned someone else's alleged misconduct, or that others "and/or" Roberta, engaged in some unspecified misconduct, do not pass the plausibility test set forth by the Supreme Court in <u>Ashcroft</u>, <u>Supra</u>.  It is respectfully submitted that one reading the complaint cannot determine what, if anything, Roberta is accused of doing wrong. The complaint is devoid of any allegation as to what provisions of the stock purchase agreement were breached, and fails to specify what acts, if any, constitute a breach.

Where as here, the contract attached to a complaint shows the absence of any relief prayed for in the complaint, dismissal is proper.  <u>Visual Word Systems, Inc. v. CPT Corp.</u>, 1985 WL567

23

(S.D.N.Y.);   <u>Jacksonville   Newspaper   Printing   Pressmen   and
Assistants Union #57 v. Florida Publishing Company</u>, 340 F. Supp.
993 (D. Ct. M.D. Florida, Jacksonville, 1972); <u>Feick v. Fleemer</u>,
653 F.2d 69 (2d Cir. 1981).

## COUNTS 2 & 3- NEGLIGENT MISREPRESENTATION

Dufner  pleads  two  separate  counts  of  identical  claims  for
negligent  misrepresentation.    The  complaint  is  devoid  of  any
explanation  for  the  difference  in  the  two  counts  or  any
allegation  whatsoever,  as  to  what  representations,  if  any,  were
negligent.

Where  a  complaint  pleads  a  claim  for  breach  of  contract,  a
claim  for  negligent  misrepresentation  is  merely  duplicative  of  a
breach  of  contract  claim,  and  must  be  dismissed.    <u>River  Glenn
Associates, Ltd. v. Merrill Lynch Credit Corporation</u>, 295 A.D.2d
274, 743 N.Y.S.2d 870 (1st Dept. 2002);  <u>LFJ Realty Co. v. Bank
of New York</u>, 2011 WL1549055 (S. Ct. Kings Cnty.).

In  order  to  survive,  a  claim  for  negligent  misrepresentation
must  be  based  upon  reasonable  reliance  on  the  alleged  negligent
misrepresentations.  <u>River Glenn Associates Ltd. v. Merrill Lynch
Credit Corporation</u>, <u>Supra</u>, 295 A.D.2d 274, 743 N.Y.S.2d 870 (1st
Dept. 2002). Here,  any  alleged  negligent  misrepresentations  are
destroyed by the disclaimer and general merger clauses.

In  order  to  state  a  claim  based  upon  negligent
misrepresentation,  there  must  be  a  relationship  between  the
Plaintiff  and  the  Defendant  of  a  confidential  or  fiduciary

24

nature. The courts have determined that a seller and buyer, and/or a borrower and a lender relationship is not of a confidential or fiduciary nature, sufficient to support a cause of action for negligent misrepresentation. <u>River Glenn Associates Ltd. v. Merrill Lynch Credit Corporation</u>, 295 A.D.2d 274, 743 N.Y.S.2d 870 (1st Dept. 2002); <u>Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC</u>, 27 Misc.3d 1236(A), 910 N.Y.S.2d 762 (S. Ct. NY Cnty. 2010); <u>Plaza Penthouse LLLP v. CPS 1 Realty, LP</u>, 24 Misc.3d 1238(A), 899 N.Y.S.2d 62 (S. Ct. NY Cnty. 2009).

Finally, Federal Rule Civ. Pro. 9(b)'s heightened pleading standard, applies to claims for negligent misrepresentation. <u>Ramirez v. Wells Fargo Bank, NA</u>, 2011 WL1585075 (N.D. Cal.). It cannot be seriously argued that the complaint, which is devoid of any allegation of any particular negligent misrepresentation, is pleaded with particularity.

It is respectfully submitted that counts 2 and 3 of the complaint must be dismissed as a matter of law.

### COUNT 4- FRAUD

Pursuant to the holdings of <u>Aetna Casualty and Surety Co. v. Aniero Concrete Co. Inc.</u>, 404 F.3d 566 (2d Cir. 2005); <u>Harsco Corporation v. Segui</u>, 91 F.3d 337 (2d Cir. 1996); and <u>Danann Realty Corp. v. Harris</u>, 5 N.Y.2d 317, 184 NYS 2d 599 (1959), it is clear that where a contract provides that Plaintiff is not relying on any representations as to the matters it now alleges

he was defrauded, such a contractual disclaimer destroys the allegations in the complaint, that the contract was entered into in reliance on contrary representations. New York law does not permit parole evidence of alleged fraud, where the parties contract includes a negotiated merger clause, or an explicit disclaimer regarding the same subject matter as the alleged fraudulent representations. <u>Wall v. CSX Transportation, Inc.</u>, 471 F.3d 410 (2d Cir. 2006).

A cause of action for fraud will not lie, where the only fraud charged relates to a breach of contract. <u>Airlines Reporting Corporation v. Aero Voyagers, Inc.</u> 721 F. Sup. 579 (S.D.N.Y. 1989). Where a fraud claim is premised upon an alleged breach of contractual duties, and the supporting allegations of the complaint do not concern representations that are collateral to or extraneous to the contract, a claim for fraud will not lie. <u>Bridgestone/ Firestone, Inc. v. Recovery Services, Inc.</u>, 98 F.3d 13 (2d Cir. 1996). Here, the alleged fraudulent representations are not collateral to or extraneous to the contract, but rather, are clearly disclaimed and subject to the general merger clause.

Federal Rule Civ. Pro. 9(b), requires allegations of fraud to be stated with particularity of the circumstances constituting the fraud. Here, the complaint merely alleges vague categories of misrepresentations and omissions concerning the value of the lease, stock, and nature of the assets, without any detail or facts as to what Defendants are alleged to have said or omitted.

Mere conclusory allegations that conduct was fraudulent, are insufficient.   Facts must be alleged, which if proven, would constitute fraud, or which lead clearly to the conclusion that fraud has been committed.   Goodall v. Columbia Ventures, Inc., 374 F. Supp. 1324 (S.D.N.Y. 1974).

To state a claim for fraud under Rule 9(b), the Plaintiff must identify particular statements and actions, and specify why they are fraudulent.   Conclusory allegations subject the pleading to dismissal.   Fongshi v. Age Group Ltd., 1996 WL627580 (S.D.N.Y.); Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989).

The alleged fraudulent representations and omissions do not indicate when or where the statements were made. They do not indicate what was said about the value and nature of the lease, stock, or assets, or what the true value and nature is.   The allegations do not give Defendants any notice of what constitutes the alleged fraud.

The fraud claim fails to state a cause of action.

## COUNT 5- TORTIOUS INTERFERENCE WITH
## BUSINESS OPPORTUNITY

The complaint alleges in vague terms that "a business relationship existed between Plaintiff, Mongero, Roberta, and Lapre. Defendants and each of them, intentionally and materially interfered with the business relationship and opportunity of Plaintiff, in and to the ownership and operation of the property and related transactions". It is respectfully submitted that the

27

complaint's allegations are so vague and broad so as to deprive
Defendants of any notice whatsoever of the conduct upon which the
cause of action is premised.

In order to plead a claim for tortuous interference, a
Plaintiff must allege that: 1) A contract exits; 2) Defendants
have knowledge of that relationship; 3) Defendant intended to
interfere with that relationship; and 4) Plaintiff suffered an
actual loss as a result of that interference. Bergman v. Town of
Hamden, 2011 WL337347 (D. Conn.); Albany Molecular Research Inc.
v. Schloemer, 2010 WL5168890 (N.D.N.Y. 2010).

The complaint is devoid of any allegations of what loss, if
any was caused by any alleged interference.  For this reason
alone, the claim must be denied.

The amended complaint fails to allege what contract, if any,
Roberta is alleged to have interfered with, or how.  An essential
element of a tortuous interference claim, is that a Defendant
interfered with a contract between Plaintiff and a third party. A
Defendant cannot be held liable for tortuous interference with a
contract to which itself is a party.  Getso v. Harvard University
Extension School, 2011 WL135012 (SDNY).

The complaint is devoid of any specific, non-speculative
allegations of in what way Roberta may have interfered with any
particular contract.  Assuming for arguments sake, the amended
complaint intends to plead a claim for interference with Dufner's
and Mongero' partnership agreement, it fails to allege in what

28

way Roberta did so, or in what manner Dufner was injured. The only allegations concerning any alleged interference are set forth at paragraphs 45 and 47 of the amended complaint, wherein Dufner alleges that Mongero, Lapre "and/or Roberta", coerced, strong-armed and blackmailed Plaintiff into no longer participating in the restaurant. Disjunctive allegations ("and/or"), are insufficient to support any claim, including a claim for tortuous interference. To avoid dismissal for failure to state a claim, a complaint must plead enough facts to state a claim to relief that is plausible on its face.  A claim will have "facial plausibility", when a Plaintiff pleads factual content that allows the court to draw a reasonable inference that Defendant is liable for the misconduct alleged.  Okoi v. Lel Al Israel Airlines, 378 F. Appx. 9, 2010 WL 1980263 (2d Cir.).

The claim for tortuous interference is insufficient as a matter of law.

## COUNT 6- DECLARATORY RELIEF

The complaint alleges at paragraph 65, that "a material dispute over the ownership and rights, duties and obligations of the parties under the various agreements has arisen", but fails to state what the dispute is, what provisions of the particular agreements are involved, or even what Dufner wishes the Court to declare. The wherefore clause of the amended complaint is devoid of any prayer for declaratory relief.

New York's CPLR §3001, requires a "justiciable controversy"

29

in order to state of claim for a declaratory judgment.  In the absence of a bona fide controversy plead in the complaint, a court should dismiss a complaint seeking declaratory relief. Goldsmith v. Goldsmith, 25 A.D.2d 515, 266 N.Y.S.2d 1021 (1st Dept. 1966) aff'd, 19 N.Y.2d 710 (1967).  In order for a court to hear a claim for declaratory relief, a Plaintiff must plead an actual controversy over contingent rights.  American Mach and Metals v. De Bothezat Impeller Co., 166 F.2d 53 (2d Cir. 1948). The complaint is devoid of any indication of a justiciable controversy.

Absent an actual controversy, a federal district court is without power to grant declaratory relief.  Certain Underwriters at Lloyds London v. St. Joe Minerals Corp., 90 F.3d 671 (2d Cir. 1996).

## COUNT 7- UNJUST ENRICHMENT

The claim for unjust enrichment, is perplexing. At paragraphs 68-70, Dufner alleges that Defendants received the benefit of Plaintiff's development of the business, goods and services, and have been unjustly enriched by the goods and services provided by Plaintiff.  However, the complaint's allegations concerning Roberta, Award, and NSF, relate to a stock purchase agreement, whereby said Defendants did not receive any business, goods, or services from Dufner, but rather, Roberta simply sold his stock in NSF for $49,000.00.

The complaint incorporates and attaches a stock purchase

agreement, and it alleges nothing collateral to that agreement. Under New York law, the notion of unjust enrichment applies where there is no contract between the parties. <u>Maryland Cas. Co. v. WR Grace and Co</u>., 128 F.3d 204 (2d Cir. 2000). Where the parties have executed a valid and enforceable contract[5], there is no cognizable claim separate and apart from the breach of contract claim. Unjust enrichment is duplicative of the contract claim, and cannot be entertained. <u>Rabin v. Mony Life Ins. Co.</u>, 387 F.Appx. 36, 2010 WL2838402 (2d Cir.).

### COUNT 8- PROMISSORY ESTOPPEL- DETRIMENTAL RELIANCE

The complaint alleges in vague terms with no specific facts alleged, that as a material inducement to continue to provide funds and services to Defendants, Defendants represented and assured Dufner of the value and preservation of the interest in the restaurant, property and business.

The complaint is devoid however, of any facts as to what, if anything, Roberta said about the value or preservation of Plaintiff's interest, what the true valuation was, or what, "preservation" means. It is devoid of a single factual statement as to what funds, if any, or services if any, Dufner provided to Roberta, Award, or NSF.

A complaint must contain more than vague, conclusory allegations to defeat a motion to dismiss. In order to plead a valid claim for promissory estoppel, a Plaintiff must allege a

---

[5] Indeed, here, Plaintiff alleges breach of said contract.

clear, unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance thereon. <u>Braddock v. Braddock</u>, 60 A.D.3d 84 (1st Dept. 2009); <u>Readco Inc. v. Marine Midland Bank</u>, 81 F.3d 295 (2d Cir. 1996).

Pursuant to the stock purchase agreement, the very categories of representations that Dufner now alleges he relied upon, were specifically disclaimed, barred, and destroyed by the merger and disclaimer clauses. Any alleged reliance by Dufner upon the pleaded vague representations, are unreasonable as a matter of fact.

**COUNT 9- SECURITIES FRAUD**

A fair reading of the complaint and stock purchase agreement reveals the transaction in issue, to be a simple $49,000.00 stock sale of a restaurant.

The securities fraud claim is premised upon Dufner's allegations at paragraph 81 of the complaint, that the aforesaid vague, speculative representations and omissions of Defendants, were made to induce Dufner to "enter into the purchase contract for the stock".

Without repeating the arguments and citations set forth herein above, that the specific and express disclaimers and general merger clause, destroy any allegations of fraudulent representations, suffice it to say that same applies equally to the securities fraud claim.

At paragraph 85 of Dufner's securities fraud claim, he refers to the "scheme of investments as set forth above...". However, the complaint is devoid of any allegations constituting a "scheme of investments". Rather, the complaint and attachments reveal a simple transaction in which Roberta sold his own stock to Dufner and Mongero.

At paragraph 87 of the complaint, Dufner alleges that "in engaging in the foregoing acts...", Defendants violated Rule 10(b)(5). However, and again, no such "foregoing acts", are set forth sufficiently to sustain any cause of action for fraud. Further, Rule 10(b)(5) as promulgated under 17 CFR §240.10(b)(5), provides in pertinent part as follows:

**It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of a facility of any national securities exchange,**

**a) To employ any device, scheme, or artifice to defraud.**

The term "interstate commerce", is defined by 15 USC §78(c)(17), as:

**The term "interstate commerce", means trade, commerce, transportation, or communication among the several states, or between any foreign country in any state, or between any state and any place or ship outside thereof.  The term also includes intrastate use of (A) Any facility of a national securities exchange, or of a telephone or other interstate means of communication, or (B) Any other interstate instrumentality.**

The amended complaint however, is devoid of a single allegation concerning the use by Defendants of any means or instrumentality of interstate commerce, the mails, or any facility of any

national securities exchange.

Finally, the heightened pleading requirements for fraud, pursuant to Federal Rule Civ. Pro. 9(b) are the same, for a claim of violation of Rule 10(b)(5). A Plaintiff must plead with particularity those facts and events which give rise to a strong inference of scienter, and by alleging facts that constitute <u>strong</u> circumstantial evidence of conscious behavior. <u>Gruntal and Co., Inc. v. San Diego Band Corp.</u>, 901 F. Supp. 607 (S.D.N.Y. 1995); <u>Ganino v. Citizens Utilities Co.</u>, 228 F.3d 154 (2d Cir. 2000).

The complaint, failing to identify any particular statements with specificity, that Dufner claims were fraudulent, or identifying the time and place of the statements, or why Dufner believes they were fraudulent, requires dismissal. <u>Dover Ltd. v. AB Watley</u>, 423 F. Supp.2d 303 (S.D.N.Y 2006).

## COUNT 10- SECURITIES VIOLATION-
## BREACH OF FIDUCIARY DUTY

The complaint fails to set forth any factual allegations establishing a special relationship between Dufner, Roberta, Award, or NSF, sufficient to give rise to a fiduciary duty. Rather, the complaint and its attachments reveal a simple, straight forward, arms length business transaction.

An arms length contractual business relationship does not give rise to a fiduciary relationship and the concomitant fiduciary duties. <u>IMG Fragrance Brands, LLC. v. Houbigant, Inc.</u>,

34

679 F. Supp.2d 395 (S.D.N.Y. 2009); <u>Stadt v. Fox News Network,</u>
<u>LLC</u>, 719 F. Supp. 2d 312 (S.D.N.Y. 2010); <u>St. John's University,</u>
<u>New York v. Bolton</u>, 2010 WL5093347 (E.D.N.Y.); <u>River Glenn</u>
<u>Associates, Ltd. v. Merrill Lynch Credit Corporation</u>, 295 A.D.2d
274, 743 N.Y.S.2d 870 (1st Dept. 2002); <u>Plaza Penthouse LLLP, v.</u>
<u>CPS 1 Realty, LP</u>, 24 Misc. 3d 1238(A) 899 N.Y.S 2d 62 (S. Ct. NY
Cnty. 2009); <u>Amusement Industry Inc. v. Stern</u>, 2011 WL867274
(S.D.N.Y.).

The stock purchase agreement reveals that the only
obligations that Dufner and Roberta had to the other, was for
Roberta to transfer his stock and for Dufner to pay for it.  The
agreement does not provide for Roberta to stay on to help
transfer good will; it does not require Roberta to give advice;
it requires nothing of Roberta other than to sell his shares.

Further, and as is evident from a review of the stock
purchase agreement itself, Dufner was represented by counsel
throughout the negotiation and execution of the agreement.
Roberta was without counsel.  This fact mitigates against finding
a fiduciary duty owed by Roberta.  <u>Plaza Penthouse, LLLP v. CPS 1</u>
<u>Realty, LP</u>, 24 Misc.3d 1238(A) 899 N.Y.S.2d 62 (S. Ct. NY Cnty.
2009); <u>Amusement Industry Inc. v. Stern</u>, 2011 WL867274
(S.D.N.Y.).

Where as here, the complaint reflects that the parties on
both sides were operating independently, with no prior existing
relationship, and with no reason to repose trust in the other, no

35

finding of a special relationship or fiduciary duty, will be found. _Amusement Industry Inc. v. Stern_, 2011 WL867274 (S.D.N.Y.), citing _M&T Bank Corp. v. Gem Stone, CDO VII, Ltd._, 68 A.D. 3d 1747 (4th Dept. 2009).

## COUNT 11- ACCOUNTING

The complaint is devoid of any allegation of a demand for an accounting, that any Defendant refused to provide one, that Dufner entrusted money or property to Defendants, or the lack of a legal remedy.

To state a claim for an accounting, a Plaintiff must plead: 1) Relations of a mutual and confidential nature; 2) Money or property entrusted to the Defendant imposing upon him a burden of accounting; 3) that there is no legal remedy; and 4) in some cases a demand for an accounting and a refusal. _IMG Fragrance Brands, LLC. v. Houbigant, Inc._, 679 F. Supp.2d 395 (S.D.N.Y. 2009); _Stadt v. Fox News Network, LLC_, 719 F. Supp.2d 312 (S.D.N.Y. 2010).

The accounting claim must be dismissed as there is no fiduciary or confidential relationship between the parties.

The complaint fails to allege that Dufner paid or entrusted money or property to the Defendants. For this reason alone, the claim must fail. _Rubenstein v. Small_, 273 A.D. 102, 75 N.Y.S.2d 483 (1st Dept. 1947).

The complaint is devoid of any allegation that Dufner lacks a legal remedy. For this reason alone, the claim must fail.

36

<u>Gross v. Gross</u>, 38 A.D.3d 893, 833 N.Y.S.2d 563 (2d Dept. 2007).

<u>**COUNT 12- CUTPA-C.G.S. §41-110-a**</u>

C.G.S. §42-110(b) (CUTPA), proscribes any person from engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. However, C.G.S. §42-110a(4), defines "trade", and "commerce", as follows:

**Trade and commerce means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value, <u>in this state</u>.**

The complaint is devoid of any allegation that any trade or commerce took place in the State of Connecticut. Rather, the complaint and its attachments establish that any trade or commerce that can arguably be alleged to have occurred, took place in the State of New York. Clearly, CUTPA does not apply to the transaction involved in this proceeding.

As set forth in the complaint and its attachments, this proceeding involves the sale of Roberta's stock in NSF to Dufner and Mongero.  CUTPA does not apply to actions involving the purchase and sale of stock. <u>Chien v. Skystar Bio Pharmaceutical Co.</u>, 623 F. Supp.2d 255 (D. Conn. 2009); <u>Russell v. Dean Witter Reynolds, Inc.</u>, 200 Conn. 172, 180, 510 A. 2d 972 (1986); <u>Olsavsky v. Casey</u>, No. 5-92-324 (WWE), 1992 WL 363573, at 4 (D. Conn.).

"CUTPA does not apply to any acts occurring outside of

37

Connecticut, unless the violation is tied to a form of trade or commerce, intimately associated with Connecticut, or Connecticut choice of law principles dictate the application of Connecticut law". McCrae Associates, LLC v. Universal Capital Management, Inc., 74 F. Supp. 2d 389 (D. Conn 2010).  The amended complaint is devoid of any allegations that anything done by the parties is tied to a form of trade or commerce intimately associated with Connecticut.  Further, the stock purchase agreement requires the application of New York law. Accordingly, CUTPA has no application whatsoever.

At paragraph 101 of the amended complaint, Dufner claims that unfair and deceptive practices are defined under CGS §41-110(a). Although there is no such statute and it is presumed that Dufner intended to identify §42-110(a), said statute is devoid of any definition of unfair and deceptive trade practices.

Finally, any claim under CUTPA, must be pleaded with particularity, to allow evaluation of the legal theory upon which the claim lies. Connecticut v. Moody's Corp., 664 F. Supp.2d 196 (D. Conn. 2009). As set forth herein above, the amended complaint is devoid of any particularity whatsoever, and certainly does not make out a claim under CUTPA.

## CONCLUSION

For all of the above reasons, it is respectfully submitted

that the amended complaint fails to state a claim and must be dismissed as a matter of law.

                              s/
                              _____
                              PERRY DEAN FREEDMAN
                              (phv04472)
                              Attorney for Defendants
                              Roberta, Award Enterprises,
                              and Northeast
                              Ten Bank Street, Suite 650
                              White Plains, NY 10606
                              Tel.:914-289-0040
                              Fax: 914-289-0054
                              pdf@perryfreedmanlaw.com